Our next case we're going to hear is United States v. Seay and Ms. Platt, whenever you're ready. Caroline Platt Good morning, Your Honors, and may it please the Court, Caroline Platt on behalf of Darryl Seay. The District Court in this case correctly ruled that the search that turned up the firearm with which my client was charged was not a valid search incident to arrest. And we submit that the Court incorrectly held that the firearm would inevitably have been discovered pursuant to an inventory search. Here, we think that the search that the Court hypothesized was neither inevitable nor had it happened would it have been a legal inventory search. So it could be reversed on either ground. It would not have been a legal inventory search because, for several reasons, the first of which was that there was insufficient evidence in the record of the inventory policy of the Hampton Police Department. This Court has several cases on point, but one of them came out during the briefing in this case is called United States v. Young. It relies on Bullett, which is cited in the briefs. The Young case is 751 Federal Appendix 387. It is clear that the government may rely on oral testimony of a policy rather than a written policy. But in this case, the oral testimony was insufficient to show that the policy sufficiently cabined the discretion of officers in doing inventory searches and also to show that the inventory policy of the Hampton Police Department covered the factual circumstances of this case, which means both that the inventory policy was not, it would not have been a lawful inventory search. It also shows that it would not have been inevitably discovered, the firearm. So it goes to both halves of why we submit that this was an erroneous holding of the District Court. Let me, you can pick up on that again, but I'm troubled by the notion that this, the District Court found that this search wasn't appropriate in connection with an arrest. I'm happy to skip to that half as well, Your Honor, whichever, I mean, it's at the court's discretion. So my question is, I watched the tape three times, take three, and as I recall, Bracey was arrested, but she was not cuffed. She was allowed to move around the room, which is an unusual procedure when you arrest somebody and then let them roam around the room. The officer subjects himself to a lot of risks, but they did that as a matter of judgment. They wanted to keep the tension low and they were cooperating. Bracey says, I'd like to go to my purse and get something out. The officer says, fine, I need to search the purse. He searches the purse, looks through it. After he searches it, he gives her the purse and she goes into the purse. Then when she finishes that, she's standing there right at the bedside and right next to the purse, contiguous to the purse, is this plastic bag. And she puts her hands into the plastic bag and the officer says, hold it, I got to check that too. And she does, she stops. She stops, he checks it and finds a gun. Now the question is, it seems to me that is just the paradigm situation where an officer can search that to protect himself, to protect escape, to protect a blow-up of the whole situation. In matter of fact, it would be terribly careless for the officer to let her go in that bag after she's been arrested for probable cause for a crime and without checking the bag first. This is not the situation where they arrest somebody, put them in cuffs and they set them on the side of the street and then they go into the trunk and open the trunk. This is a case where they don't cuff them. They let the woman get into the bag and hold it, stop. And the district court seemed to suggest, made two statements, said, well, they did let Bracey go around the room, but the next statement suggested that the bag wasn't close enough that she would have access to it, basically. And so my question is, I can't think of a closer situation of where you're entitled to search, incident to arrest, to protect the officers, to protect escape, to protect a blow-up of the situation. This is just a paradigm. So here's my answer, Your Honor. First of all, so as you know, Ms. Bracey was the arrestee. Mr. Seay was not. Mr. Seay was actually in the bathroom with several other officers at the time. He was nowhere nearby. The plastic bag in which the gun was held was not being carried by the arrestee, Ms. Bracey, at the time of the detention. David, do you agree that Ms. Bracey was under arrest at that time? No, I think she was going to be arrested, so at the time of the arrest. No, she was put under arrest and not cuffed. She was under arrest and he was not. That's not what the police officers testified, Your Honor, but I think that's a red herring. So to answer your question, Your Honor... Okay, fair enough. Doesn't matter what she's arrested, but at the time, she puts her hands in that bag. Yes. However, at Joint Appendix, page 140, I think this is a dispositive fact to support upholding the District Court's finding and conclusion. At JA, page 140, Officer Lucy, whose body's camera, you're referring to it, Officer Lucy 3, 25-60. JA, Officer Lucy testified, In the video, I told her to come step back around the corner. He's talking about the same minute you're talking about. You told her to step back around the corner toward the bed. Yeah. Come back over to where the bags are to ask her questions. Yes. And she followed your direction. She came around that half wall and came back over to the bed, correct? Yes. Officer Lucy directed her to put her back where the bag is. That isn't what the tape says. The tape says she makes the statement, I need to get something out of my purse. And then he told her to wait. And she walks over to get out of her purse, and he says, hold it, I need to check. So, Your Honor, this is in the Joint Appendix, and this is a finding of the District Court that if there are two options of the District Court, you cannot find it to be clearly erroneous. Except we have a case where we have a tape overrules the District Court's factual finding. And this is Officer Lucy testifying about his own actions on the tape. And so it supports the factual finding of the District Court. There's nothing in the record that supports reversing the District Court's finding on this. The whole point is, the officers are entitled to search incident to arrest when the risk is there, and she could get access to the gun. Unless under... In other words, the notion where somebody is arrested and taken away from the scene, you can't go back to the car safe. Justice Scalia and Gantz noted that the police officers are not allowed to control the situation, so to extend the grab area of the person under the shimmel half of Cintra's arrest... When was she arrested? What is her position? I don't think she was formally arrested until after the gun happened. But again, Your Honor, they are allowed to search incident to arrest before the formal arrest under occurrence, and a lot of other cases... Sure, but when was she actually arrested? They were both formally arrested after the gun was found. Wasn't she arrested first? Because they found the stuff in her pants? No, Your Honor, they decided to arrest her, but they did not formally arrest either person until after the gun was found. But they had decided to arrest Ms. Bracey and not Mr. Saib after they found the crack pipe and the other stuff in the ladies lingerie. So again, Your Honor, the record supports, especially once Officer Lucy testified... They had probable cause to arrest her at that point, right? Correct. But the formal arrest... But again, the timing of the formal arrest is not disclosed. It's not material to the issue. Right, I agree. The issue is whether she could have access to where the gun was or to the facility that's being searched. In other words, if the machine gun is in a violent case and the guy could get close to the violent case, you can search it before incident to an arrest. Unless the police have manipulated the grab area by their own control such that they have changed the grab area. So that's under a number of cases I've cited from four or five different circuits. So I think if this court overturns that holding of the district court, you will have created a circuit split with the 5th Circuit, the 7th Circuit, the 8th Circuit, the 9th Circuit. I mean, there's four or five different circuits that have all held this. And again, it's suggested by Justice Scalia's opinion and can't. And so, which again is not the whole... I mean, the police may not manipulate the grab area under the shimmel half of the search and address doctrine. Well, I agree with you that it is somewhat unclear from the record as to when the arrest occurred. But why isn't this a classic case of inevitable discovery? Yes. So, Your Honor... I mean, she said it's our stuff. But she did say it's our stuff. Yeah, I mean, doesn't that sort of end the... And it's right at that same minute. So this is the other thing I would say. So it's very clear that Mr. Shea is holding the plastic bag. And she was asserting ownership. And she did assert ownership. So this is... I don't know if everybody knows. I'd like to offer hypothetical, Judge Kinney, if I may use you as my example. If you and I are walking back to the hotel, because we both have to go back to Northern Virginia later, and you and I are walking down the street, and I get arrested, and you do not get arrested. And we both put down the bags we're holding. You're holding a black briefcase. I'm holding a pink briefcase. And then the police officers move the bags, which is what happened here. Yeah, but I think that's speculative. I mean, here you have... She says it's our stuff. She is reaching into the bag. She's looking into it, touching it. And there are a couple. And the officer then testified at the hearing. Yeah, it would be standard practice to take what she has and look through it. And even if she didn't want to take it with her, we can't hand it off to somebody else if it has a weapon or something in it. So we check it. So you say, well, what if she asserted... What if she said, no, no, that's not my bag. That's his bag. What if she was very clear? But that's speculative. She said it's our stuff. She did very clearly say it's her stuff. I say it's our stuff, but he was holding it, right? And so even though there are a couple, he was holding it at the time of detention. And the police officers co-mingled the bags. And then she says it's our stuff. So if you and I are walking down the street, and then I say it's our... The police have put our bags next to each other. And then I say, oh, that's our stuff. Can the police inventory your belongings because I got arrested? I mean, in this case, Mr. Sajid was not going to be arrested. And then she claims ownership over a bag that he possessed physically. So leaving aside hypothetical who owns it as a matter of property law, in terms of physical possession, he possessed it. If I may, how long was the time between when he was carrying the bag back into the hotel room and when an inventory search would have occurred? Almost an hour. Yeah. And the police, again, had moved the bags from where he put it, and then they put them next to each other. And the other thing I'll say to get back to my original point. So it had been almost an hour later. The police were the ones who put the bags next to each other on the bed. And then it's... She says it's our stuff, which has nothing to do with Mr. Sajid's rights. And the police had seen him carrying the bag. They saw... The police saw him pack the bags. It's all on the videos. And moreover, this gets me back to my first point. The policy that the police testified to doesn't speak to joint property. So even giving deference to the factual finding in court, and that we can see that she claims property rights jointly because they're a couple to our stuff. What the police... The Hampton Police policy that they testified to, and I don't know what it says in writing because we've never seen it. If there is joint property of a couple, or joint property by anybody, and one person is going to be arrested and one person's not, we don't know what the policy says over whether you have to inventory to release it to the joint owner. She was holding the bag and packing it when the officers entered the room, wasn't she? I think for a split second she's touching it. I don't know if she's packing it. So there's evidence that she was asserting ownership over the bag other than her statement, it's our stuff. Joint ownership, not sole ownership. And again, at the time of detention, he was in physical possession of it. So again, property rights and physical possession. But this gets me back to the insufficient policy evidence. So they both were possessing it is the point of my question. I mean, she was packing the bag, she was holding it, and later on says it's our stuff. It's very early. So we don't know what the Hampton Police policy is for jointly possessed property where one person is not going to be arrested. But didn't Officer, I think it was Lucy, right, testified at the hearing. What would have happened to these bags? We would have searched them pursuant to the policy. If it was her stuff. And then he said it's up to officer discretion. And under Bullitt and under Young, you need to know what cabins the discretion under every inventory case. The government says that discretion piece has to do with how you do it, whether you have your body camera on and you're describing what you see or whether you don't turn it on. The government says that, but we don't know. Again, I'm talking about the insufficiency of the evidence of the policy, which is the government's burden. If I may interrupt you, isn't this a situation where we give deference to the factual findings of the district court? And what the officer meant by this part is up to my discretion. If we can interpret it the government's way or we can interpret it your way, don't we have to allow that the district court made a factual finding? I think the sufficiency of the evidence of a legal inventory policy is a legal question, Your Honor, not a factual question. I think the officer saying moving the bags or what I would have done, I think that part is a factual finding that you give deference to. But I think whether or not there's sufficient evidence of what the Hampton Police policy is is a legal question that you reviewed de novo. But what he meant when he said something about discretion is a factual question. Yes. But whether this court, as this court said in Young, has sufficient evidence to know whether the policy cabins the discretion of the officer such that it is in accordance with Bertine and this court's decisions in Bullitt and all the other, you know, Williams and Ford and all the other inventory policies, that's a legal question and we don't know what the policy is. What cabins that discretion? It's inherently illogical that the police, having found Bullitt, having found crack residue, I guess, having found all this other contraband, is suddenly going to say, even leaving aside the evidence of our stuff, is suddenly going to say, well, you want to take this home with you? If they weren't arresting Mr. Say, it's just, to me, it strains common sense. Why is that a logical thing that the police would ever do? As to the inevitable discovery inventory search, they're not valid for investigatory reasons. That makes it an illegal inventory search under Brown. And so as to the search and to arrest, we get back to... Right, but they already knew that they have a lot of evidence of criminal activity. So not that they were, yeah, yeah, it was wrapped in, a lot of this stuff was wrapped in her underwear or in women's underwear. Right. Again, Your Honor, that gets me back to they didn't, the government should have put in the policy. And this may get to the fact that the district court is the one who raised the inventory and not the government in the initial briefing. I'm not saying it's waived. I'm saying that may get to why we don't have the policy. But that doesn't mean that the government met its burden to prove what the policy was and that the police officers were, again, as a matter of law, that their discretion was sufficiently cabined for this to be legal under Bertine and the other inventory cases, never mind that it was inevitable under Nix. If the court has no further questions. Yeah, I do have a question. I can't find your suggestion that the officers called her over to the back. As a matter of fact, to the contrary, I'm looking at Lucy's direct testimony at page 69 and 70. I'm sorry, I only have 26 pages. And she's in the, actually it's 115, JA 115, 160. If you look at page JA 140, it's there. Well, let me just get my question out. He says she's sitting on the, in the chair. And he's now recounting how the tape says. He's sitting on the chair and the officer, Lucy, says she's not restrained in any way. And she's sitting there. And when he approached this pink bag to look inside, did Ms. Bracey make any statements or questions regarding the pink bag? These two are on the bed now. And he said, actually, I'm going to skip forward to 2313. Now, that question, may I see my bag real quick? Whose voice was that? That was Ms. Bracey. And continue in 2016. Now, based on this video, pause at 2323. Immediately after asking to see the bag, where was Ms. Bracey physically at the time? She was standing directly next to me. Had anyone instructed her to go to walk over there? I do not know. But no, not that I heard on the video. She had come over to talk with me to ask for her bag. Now, that is, he's interpreting the video, which I watched, which is consistent with what I saw. So, Your Honor, in the district court's written opinion in this case, the district court notes that Officer Lucy's direct testimony, what you looked at, and the cross-examination, which I read from JA 140, read differently. And the district court may defining a fact in his written opinion that I submit may not be advertised. We have cases that suggest when the video contradicts the findings, we follow the video. But it's Officer Lucy telling you what happened. It's not all audible because it's a body cam video. It's audible. I heard it. But he says that there are other things that happened. Again, the district court chose between two interpretations, and under this court's review, that cannot be clearly erroneous. And the district court addresses that inconsistency in its written opinion. Well, I know the district court does, and the district court doesn't account for the fact that she asked to see the purse, came over to look in the purse, and was standing on the bed looking in the purse, and he said, hold it. She's initiating all this. And he says, hold it. And he then searches the purse, pulls everything out. He's looking inside, pulls this out, and then puts it back, and he gives her the purse. She then looks in the purse, and then she, after she puts the purse down, she then reaches into the plastic bag, and he says, hold it. So these are all situations. He didn't set her up for that. She initiated all this. Officer Lucy testified that he directed her to come towards the bed at page JA 140, Your Honor. Thank you. All right, Mr. Young. Good morning, Your Honors. May it please the court. I'll start with the factual issue and its import for the search incident to arrest doctrine, since that we just ended. And, Your Honor, of course, under Scott against Harris and this Court's decision in Kehoe, we agree that the video controls. The relevant video appears at 3 Lucy 2258, and I think the factual circumstance underlying the colloquy between Your Honor and my friend on the other side is that Ms. Bracey actually comes over to the bed twice, and I think that's why there was some confusion a moment ago. Here's my best recounting of what happened in the moments before the search of the plastic bag. Ms. Bracey is sitting in a chair up against the wall, no more than four, five, six feet from the bed that's closest to her, and the bags are on the bed. At the time this whole interaction begins, Officer Lucy is searching the pink bag and purse. She then comes over on her own, Judge Niemeyer, exactly as you said, and she says, Can I see that bag? And he says, Hold on, I'm searching it. What I think I saw in the video is that at that point she steps away from the bed and goes back to the chair for a moment. Officer Lucy finishes searching the pink bag, and then he pokes his head around the side wall, and he says, Is that your bag right there? And at that point she gets back up, walks over to the bed, and says, Yes. And then he gestures towards the clear plastic bag and says, Who's this stuff? And then she touches it. And holding it, and there's a still of this in our brief, she says, This is our stuff. And then at that point he says, Wait, wait, wait, I need to search that before you can touch it. And I think what's happening is my friend on the other side is interpreting the second interaction, Is this your bag? as a command to come over by the bed. And in the Federal Public Defender's argument, insofar as that's a command, the police are manipulating the situation. I don't think that's correct for the simple reason that this entire time, from the chair to the bed, I think we're within the Shamel area of control. She wasn't 20 feet away from the bag. She was a few feet away on the other side of this house. When was she arrested? She was arrested approximately – I think both of them are custodially arrested when they're brought back into the room. They can't leave. She's formally arrested at Depentuma 3-2121, which by my best estimation is 13 minutes after the search of the bag. That's when they put cuffs on her. When did they say you were under arrest? At that time, about 13 minutes after the search of the clear plastic bag. And when they questioned her in the bathroom, they gave her Miranda. That's correct. She was just in custody then, right? I think she was in custody the moment they brought her back out of the hotel room. If she had said, can I leave, they would have said no. But my point, Your Honor, is ultimately, I don't think this debate about who asked who to do what is relevant for purposes of Shamel. She's within reasonable reaching distance of the bag as she's sitting in that chair this entire time. What's more, even if the court were concerned about is this your bag leading her to come back over to the bed, she is not asked to touch the clear plastic bag. She does that entirely on her own. And at that point, I think the rationale of this court's decision in Gwynn kicks in. Gwynn is a case where an individual was arrested without shoes or a shirt on outside of his trailer. The police then go back into the trailer to get shoes for him. His girlfriend directs them to his boots. They pick up the boots. The boots seem heavy. They look in the boot. There's a gun. And the question was improper search or no. And here's what the court said in Gwynn. Police officers are clearly justified in searching any item before they give it to a person in their custody to protect their safety and deny the person contraband. Now, it seems to me that the logic of that officer safety rationale applies even more strongly if not only has she asked to see the clear plastic bag, she's reached out and grabbed it. Because at that point, if there's a weapon or destructible contraband in the bag, police have to be able to protect it and protect themselves exactly as the court in Gwynn said. So at the moment, she's holding the bag. All of the rationales underlying the search incident to arrest doctrine kick in. And I think the district court erred based on the clear video evidence, which is essentially undisputed. If I could turn briefly to the inevitable discovery pursuant to an inventory search argument, we obviously think the district court was correct there and the court could affirm on that basis. I want to take a moment to explain why I think the federal public defender's arguments on this score are incorrect. As I understand their argument, their argument is to concede that the property was jointly possessed. It's our stuff. Both of them had interacted with the bag, exactly as you said, Judge Keenan. And then to say something like, in a circumstance involving joint possession, the police ought to have given the bag to the defendant instead of inventorying it as though it were exclusively her property. That's wrong for a couple of different reasons. The first reason it's wrong is that it is black-letter Fourth Amendment doctrine that the Supreme Court has emphasized again and again that police do not have to adopt the least intrusive method of conducting inventory searches or indeed of doing police work generally. The two key cases on this are Illinois against Lafayette and Colorado against Bertin. Lafayette is a case where someone walks into a station house to be arrested with a backpack. Police do an inventory search of the backpack, including its contents. And he says, wait, wait, wait. If the rationale of the inventory search doctrine is to prevent unfair accusations of theft, you could have just taken the whole backpack and put it in a police locker. You didn't need to search its contents. And the Supreme Court said that that argument had no weight. The police were entirely within their rights to search the bag. They went further. They said, we are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. That's 462 U.S. and 648. Then Colorado against Bertin is a case involving a backpack inside a car. The car is impounded pursuant to an inventory search. Police search the bag. There again, the defendant says, if the car was in a secure impound lot, you have no reason to search the bag. And the Supreme Court in Bertin says, of course you can search the bag pursuant to an inventory policy. And here was the clear testimony of both Officer DePintema and Officer Lucy that they were going to search the bag regardless of whether they gave it to the defendant because even if they gave it to the defendant, they were going to inventory it and fill out a field interview card listing its contents precisely to protect themselves against false allegations of theft or loss, which is the entire rationale of the doctrine. So that's the first reason that their argument fails. There's no obligation to adopt a lease-intrusive method of conducting the inventory. The second reason the argument fails, and Judge Keenan, this gets to a question that you asked a moment ago, is we think the right understanding of the doctrine in that in circumstances where the arrestee says, hey, instead of taking my property back to the station house, can you just give it to a third party? The police have the ability to decide whether or not to comply with that request under principles of reasonableness. This court essentially said as much in a case called Brown. Brown was a case involving an impoundment and inventory search of a vehicle, and the defendant in Brown said, hey, instead of taking it to the station house, can you give it to my girlfriend? And the court said, well, there was inconsistent testimony about where this guy actually lived and whether the girlfriend really existed, and in all the circumstances, it was reasonable for the police to say no. And Judge Keenan, this gets to your point. At the time that police had to decide what to do with this bag pursuant to an inventory search, they already knew that there were drug paraphernalia in the room, there was a bullet in the room, in the toilet from the bathroom where the defendant had exited, and they knew by this point that he was a convicted felon because he told them as much in his Mirandized interview. So the idea, when all of these doctrines are backgrounded against the rationale of officer safety, that if she had said, could you please give that to Mr. C.A., the police had an obligation to do that when they knew that doing so could have exposed them to danger, we think contravenes reasonableness principles. Let me ask you about Ms. Platt's reply brief, and I'll be asking her about this on rebuttal, too. At the top of page 11, it says, Mr. C.A. agrees that the police inevitably would have and could have inventoried Ms. Bracey's belongings as she was the intended arrestee at the time of the search. Do you read this as a concession or no? I think what it does is it cabins their entire argument to the joint possession inquiry that we were just discussing. I think once they say that, then their argument has to be, but in a joint possession situation, the rules are different and we don't think they are. That's the way that I would interpret that, Your Honor. Okay, thank you. Absolutely. I also want to say just a few words about the argument that police manipulated the situation, essentially by not arresting, and by arresting I mean handcuff arrest, earlier. Because that comes up again and again in the other side's briefing. The only reason that Ms. Bracey ever got close to the bag was because they let her walk around, and that should be construed against the police, and therefore they can't have access to the search incident to arrest doctrine. We think that argument is just flatly contradicted by the Supreme Court's decision in Kentucky against King. Kentucky against King is about the exigent circumstances doctrine, and one of the things that had happened in the years before that opinion came down is that various courts had adopted rationales to constrain the doctrine because they were afraid that police were employing it in circumstances where it wasn't absolutely necessary. And one of those rules was called a reasonable foreseeability rule. Some courts had said, if the way the police conduct their investigation makes it reasonably foreseeable that an exigency will be created, they can't then use the exigent search doctrine to search the property. And Justice Alito, writing for the court, said, absolutely not. The Fourth Amendment does not embrace any kind of reasonable foreseeability rule. The doctrines exist independently, and police have wide latitude to conduct investigations as they see fit. In our view, Your Honors, that completely destroys the argument that police somehow acted improperly here by allowing them to move around. The entire investigation here was conducted respectfully. It was conducted in a way where they wanted to do Mirandized interviews to ensure that they had all of the relevant information. And, as Justice Alito also said in Kentucky Against King, when talking about door knocks, it's possible that if the police knock on a door, far from creating an exigency, they will learn information that leads them not to make an arrest. So too here. It's possible that by allowing the investigation to proceed in this way, conducting respectful Mirandized interviews, they could have garnered information that would have led them not to make an arrest at all. So we just don't think that allowing these individuals some freedom of movement somehow destroys the police's ability to search pursuant to the inventory search or to search pursuant to Ms. Bracey's pending arrest. If there are no further questions, Your Honors, I will rest on my briefs. Thank you very much. Ms. Platt. Ms. Platt, I was pointing to that language at page 11 because it seems to me that you're effectively conceding that if this was her property, they had a right to it. I think, Your Honor, now that you've pointed it out. I don't want to say conceding. That's not a good word for a defendant's attorney, but that having been there myself many times. In retrospect, I should have included the phrase solely possessed. I mean the pink bag. We concede that the pink bag was inventoryable, her purse. I think that my colleague Mr. Young's answer is roughly what I would have said, which is to say my argument is about jointly possessed property because I have to defer to the district court's findings and because she is seen holding the plastic bag at one point in the video. That's why I want to get back to where I started, which is United States versus Young and this court's language. It goes through the normal, you have to have policies, the cabin discretion. The language is everywhere from Bertine all the way down. But then this court said, I think it was an oral testimony case where the policy wasn't in writing. I'd also like to say if the Hampton Police policy for inventory were in writing and in evidence in this case and it said, in the case of jointly possessed property where both people are there and one is going to be arrested and one did not, we will inventory the property. I'm not claiming that that would be an illegal policy. What I'm claiming is that we don't have the evidence in this case that that policy exists and was followed in cabin's discretion, that the government didn't meet its burden. So here, just like in Young, the court says, nor critically did the police officers, there's a name here, Deputy McGregor's testimony fill that gap. To be sure, McGregor explained her reason for conducting an inventory search testifying that the car was searched because it was being towed and the police did not want to be responsible for anything left in the vehicle. And that testimony presumably was the basis for the district court's finding that it was conducted in good faith, but it does not describe nor even refer expressly to any Richland County Sheriff's Department policy or standard procedures or criteria that the department requires officers to observe in carrying out those searches. And so just like here, we don't know what the policy and criteria were for jointly possessed property where both people are there, so this is unlike Brown where the girlfriend is not around, the case where the girlfriend, I think it's Brown. Here, they're both there and we don't know what the Hampton policy is and that's why this is just insufficient as a matter of law to be a valid inventory search leaving aside the inevitability aspect under NICS. And so it is the jointly possessed, just as Mr. Young suggested, it's the jointly possessed aspect of this case that makes it different. I mean, the government nor I could find any case that addresses an inventory search of jointly possessed property where both people are there and only one is going to be arrested. It's very unusual that we know that the police only intended to arrest one person at the time of the search because of the body camera video. And so the other thing is that the policies informing the inventory search doctrine, a lot of it is to protect the police from theft. He's not going to steal from himself if it's jointly possessed property. He's not going to say, oh, that protection aspect isn't there because he's there. With regard to what my colleague was saying about Kentucky versus King and where the Fourth Amendment prefers rules rather than case-by-case determinations, that's actually not true under SHML. The Chief Justice wrote about this at length in Riley, but it's always been true. The Robinson half of search and arrest is a bright line rule. You can search the body and the cigarette pack aspect of a person all the time per se, no questions asked. The SHML grab area search is a case-by-case question every single time based on the circumstances of the case, which gets us to the Griffith line of cases and the fact that here the police officers did direct her towards the bed and they did allow her access to the room. The answer is not necessarily handcuffs. We're not saying that's dispositive. What we're saying is that they allowed her access to the room and they did control when she could and could not touch the bags consistently and repeatedly. If they were worried about all of the potential dangers of the things on the bed, they could have just said, no, stay in the chair, stay in the living room. You're not allowed to touch them. That was within their power and control. They did it at other times. The fact that they chose not to do it at this time should not expand the area that they can search an hour after the custodial detention in this case and before the formal arrest happened. For these reasons, as we said, we think that the court was well within its discretion and not clearly erroneous when it ruled that this was not a valid search incident to arrest, and we submit that the inventory search was neither inevitable under NICS and would not have been a legal inventory search because the government did not meet its burden to prove that there was a Hampton policy that covered this certain circumstance. There's just insufficient evidence in the record under Bullitt and Young. Thank you. We'll adjourn court, signee die, and then come down to Greek Council. This honorable court stands adjourned. Signee die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Allison J. Rushing